JonwsoN, C. J. The object of this bill was to establish a resulting' trust in one-half of certain lands therein described. It is contended, on the part of the appellants, that the right of the appellee, in case it ever existed, is now barred by lapse of time, and that, if not so barred, it cannot be established by parol evidence. The 12th and 13th sections of the statute of frauds declare that “all declarations, or creations, of trust, or confidences, oí any lands or tenements, shall be manifested and proven by some writing signed by the party, who is or shall be by law enabled to declare such trusts, or by his last will in writing, or else they shall be void; and all grants and assignments of any trust or confidences shall be in writing, signed by the party granting or assigning the same, or by his or her last will in writing, or else they shall be void; ” and that “ where any conveyance shall be made, of any lands or tenements, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall not be affected by any thing contained in this act.” (Digest, chap. 73.) In the case of Hoxie vs. Carr et al., 1 Sumner, Judge Stoey, when commenting upon the statute of frauds of Rhode Island, said: “Then again it is said, that the statute of conveyances and the statute of frauds of Rhode Island contain no exception in favor of resulting trusts, (as the statute of frauds in England and the corresponding statute of Massachusetts do,) and therefore such a trust cannot be varied by operation of law in favor of the partnership. But it does not appear to me that the statutes of Rhode Island vary the common rule, for they respect trusts created by the acts of the parties, and not trusts created by operation of law. My impression is that the exception in the statute of frauds in England and Massachusetts, as to resulting trusts, has been deemed merely affirmative of the general law, and not as creating a saving of resulting trusts, which would otherwise have been cut off unless in writing. But it is the less necessary to decide this point absolutely on this naked ground: for if the property were purchased with partnership funds, and for partnership purposes, and thus it became an executed contract between the parties, it would be a fraud upon the partnership afterwards to appropriate it to the private use of cither of the parties, without the assent of the others. And purchasers claiming under him with notice would bo in the same predicament as the partners so misapplying the funds. No one will doubt that a partner cannot shelter himself in a court of equity from responsibility for a fraud under cover of a statute to prevent fraud. That would be (as has been often said) to convert the very statute into an instrument of fraud.” It is laid down, as a general doctrine, in the books, that, to create a resulting trust, there must be an original agreement creating the trust at the time of the purchase, or at least at the time when the contract for the purchase takes effect, and is executed by an appropriation of it as partnership property. And it is also recognized as a general rule that a resulting trust cannot arise in contradiction to the terms of the deed. The question to be settled here is, whether the trust asserted in the present case is liable to any exception on either of these grounds. It most unquestionably does not contradict any of the terms used in the deed, nor has it a commencement posterior to the partnership purchase and appropriation. The next question is, whether there is sufficient evidence to establish the fact that the property in controversy is property belonging to the partnership and purchased with partnership funds. The remark of Judge Story, in regard to the saving clause contained in the statute of Rhode Island, is equally applicable to our own. If any doubt could exist upon the question whether resulting trusts were embraced within the scope and operation of our statute in case there were no express exception, that matter is placed in a clear light by the words of the act itself. Resulting trusts, or trusts created by operation of law, being expressly excluded from the operation of the statute, it is manifest that parol evidence is admissible to establish them. The evidence, in such cases, is not introduced to establish any fact inconsistent with the legal operation of the words of the deed, but merely to engraft a trust upon the legal estate. The entire testimony taken in the cause concurs to establish the fact that one undivided fourth-part of the town tract, though nominally conveyed to Kelly alone, was in reality purchased with the joint funds of Kelly and Ramsey. It is apparent, therefore, that a trust resulted originally in favor of Ramsey for one-half of that portion conveyed to Kelly, and the only question now remaining is, whether Ramsey has been shown to have done any act which could legally deprive him or his heir of the benefit of it. The first position is, that, even admitting that the trust once existed, it is now barred by the lapse of time. It is conceded that lapse of time is sometimes allowed to prevail in equity, but whenever such plea is allowed it is only in analogy to the plea of the statute of limitations at law. It being considered in the nature of the plea of the statute of limitations, can only be adopted to bar a right where there has been an adverse possession, and consequently where the party asserting his right is guilty of negligence. The charge of laches or neglect cannot be properly made against the complainant, nor his deceased ancestor, as neither Charles nor James DeWitt Clinton Kelly can be said to have held the land in dispute adversely to either. The purchase being in partnership and with joint funds, share and share alike, the possession of one was the possession of the other, and consequently neither could set up the lapse of time in prejudice of the other’s rights. The next ground taken by the appellants is, that, previous to the death of Ramsey, he and Kelly dissolved partnership, and actually made partition of all their partnership effects. If this proposition be true, and sustained by the evidence, it must be conceded that the appellee had no right, and is, consequently, entitled to no relief. To determine this question correctly, recourse must necessarily be had to the testimony. The appellees introduced three witnesses, each of whom testified as to the existence originally of the trust estate. They derived their knowledge of the fact from both parties to the transaction, and their testimony is conclusive upon that point. Their testimony, in regard to the continuance of the estate down to the period of the death of the original parties, is as strong as it could possibly be under all the circumstances of the case. To show that the estate still continued necessarily involved a negative, it depending upon the question whether a division had been effected or not, and it would be difficult to conceive of a case where a nearer approach could be made to the entire establishment of a negative. Indeed we think that the testimony of the appellee’s witnesses, when taken in connection with the strong extrinsic evidence which pervades the whole, leaves no doubt that the property now in controversy remained in statu quo and undivided at the period of Kelly’s death. The fact that the property was purchased originally with partnership funds, is denied, it is true, by the answer, but this answer is completely overturned, not only by the appellee’s witnesses, but by the united testimony of both parties. Egner, the witness introduced by the appellants, is equally clear upon this point. There is no difference of opinion amongst them in regard to the division of that portion of the tract which had been laid off into town lots by the original proprietors, and the appellants’ own witness testifies that, as to that part, they executed deeds to each othe.r. He stated that, after they had divided the one-fourth of the lots so laid off, Ramsey told him that they had divided all their town property, and that subsequently he also told him that they had effected a division of all their property. The whole current of the testimony offered by the appellee is of an opposite character and tendency upon the subject of a full and final division. This case presents one very remarkable feature upon the supposition that an entire division had actually been made previous to the death of Ramsey. It has not been made to appear by any .exhibit in writing, nor has it been testified by any witness, wbat disposition was ever made of tbe residue of the land after the division of the town lots which were laid oif by the original proprietors. That residue is the subject matter of this suit. The utter absence of proof upon this point raises a most violent presumption against the idea that any division was ever made between the parties. The circumstance that in the division of their other real estate they were careful to preserve written evidence of their respective rights is strong, if not conclusive, in connection with other pregnant circumstances that the residue of the town tract remained undivided at the period of their deaths. The answer indirectly admits that a partnership once existed between the parties, but insists that all the partnership property was divided before the death of Ramsey. This answer is clearly overturned by the testimony.^Tt is not only contradicted by one witness and strong corroborating circumstances, but it stands opposed by the concurring testimony of three witnesses, and that testimony corroborated and supported by the strongest possible circumstantial evidence. We are clear, therefore, that the trust asserted in the bill not only once had an existence, but that it still exists, and that the complainant is entitled to the full benefit of it. It is also objected, against the decree, that it is rendered against the administrator of James DeWitt Clinton Kelly for one-half of the purchase money for which the lots had been sold by his guardian. We cannot perceive any error in this respect. The estate is liable to the complainant for the amount, and the administrator, having the custody of it, is the proper party to pay it. We are, therefore, of opinion that the decree of the circuit 'court of Independence county herein rendered ought to be, in all things, affirmed. The decree is, in all things, affirmed with costs.